*FILED
·U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

11 MAY 12  PM 4: 02

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

|  |  |
|---|---|
| GOLD SEAL TERMITE AND PEST CONTROL COMPANY, on behalf of itself and all others similarly-situated,<br><br>            Plaintiff,<br><br>   vs.<br><br>ILD TELECOMMUNICATIONS, INC. d/b/a ILD TELESERVICES, INC.,<br><br>            Defendant. | Case No. _____<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED**<br><br>**1:11 -cv- 0 6 4 2 JMS -TAB** |

## CLASS ACTION COMPLAINT

Plaintiff, Gold Seal Termite and Pest Control Company, by counsel, on behalf of itself and all others similarly situated, for its Class Action Complaint against Defendant, ILD Telecommunications, Inc., d/b/a ILD Teleservices, Inc. ("ILD"), alleges as follows:

### NATURE OF THE CASE AND THE LEC BILLING INDUSTRY

1.     To eliminate fraudulent charges on local telephone bills, Indiana law requires ILD to possess written or electronic documentation of five facts as an absolute precondition to collecting any compensation for third-party service provider charges that ILD causes to be placed on local telephone customers' bills. Indiana law expressly prohibits ILD from receiving any compensation for those charges if it does not possess all of that required documentation, regardless of whether those services were actually ordered or received by the telephone customer.

2.     ILD and hundreds of third-party service providers devised an elaborate conspiracy to obtain compensation for service charges in violation of Indiana law by agreeing to submit

intentionally false affidavits and other documents to local telephone companies, such as AT&T, which falsely state that ILD and the third-party service providers possess the five categories of information required by Indiana law in order for them to be entitled to collect compensation for those charges. Those false affidavits cause the telephone companies to place the third-party service providers' charges on the customers' telephone bills, and cause ILD to obtain compensation from customers for third-party service charges in violation of Indiana law. Through this conspiracy, ILD has obtained compensation from nearly a million Indiana telephone customers.

3.     This is a class action on behalf of the Plaintiff and thousands of other Indiana local telephone customers who are entitled to treble damages under RICO and other relief because they paid substantial sums of money for charges that ILD caused to be placed on their local telephone bills as a result of ILD's scheme.

4.     The Plaintiff and the Class bring claims against ILD for (i) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961 *et seq.*, (ii) conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961 *et seq.*, and (iii) damages resulting from civil conspiracy.

5.     Plaintiff and the Class seek actual and treble damages, interest, costs and reasonable attorneys' fees.

**PARTIES**

6.     Plaintiff, Gold Seal Termite and Pest Control Company, is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business in Marion County, Indiana.

7.     Defendant ILD Telecommunications, Inc. d/b/a ILD Teleservices, Inc. is a Delaware corporation with its principal place of business in Ponte Vedra Beach, Florida. ILD is a billing aggregator that arranges for third-party service providers' charges to be placed onto Indiana customers' local telephone bills for services that are purportedly provided by those service providers. ILD has been the subject of prior Federal Trade Commission and states' attorneys general actions based on similar billing schemes.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction because Plaintiff's claims arise under the laws of the United States. *See* 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the Plaintiff's state law claims under 28 U.S.C. § 1367(a) because those claims are so related to the claims asserted under federal law that they form part of the same case or controversy.

9.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, and it is a class action that consists of more than one hundred members brought by an Indiana citizen against a Defendant that is a Delaware corporation with its principal place of business in Florida.

10.    Venue is proper in this Court under 28 U.S.C. § 1391(a)(2) because the events or omissions giving rise to Plaintiff's claims occurred in this district.

## CLASS ACTION ALLEGATIONS

11.    Plaintiff brings this action on its own behalf and as a class action on behalf of the following class:

> All persons or entities in Indiana who paid any charges during the four years
> preceding the filing of this action through the date of class certification that were

3

included on their local telephone bills at the direction of ILD Telecommunications, Inc. d/b/a ILD Teleservices, Inc.

(the "Class").

12.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(a).

13.     The Class consists of thousands or more persons or entities throughout the State, such that joinder of Class members is impracticable.

14.     There are questions of law and fact that are common to the Class that relate to ILD's conspiracy to submit false affidavits and other documents to local telephone companies regarding its compliance with Indiana law in order to place third-party service provider charges on local telephone bills. That conspiracy is based on a common course of conduct by ILD.

15.     The claims of the Plaintiff are typical of the claims of the Class because they are based on the same legal theories, and Plaintiff has no interests that are antagonistic to the interests of the Class members.

16.     The Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. The Plaintiff has retained competent legal counsel who has extensive experience in class actions.

17.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

18.     Questions of law and fact common to the Class predominate over any questions affecting only individual class members, particularly because the focus of the litigation will be on the conduct and business records of ILD. The predominant questions of law and fact in this litigation include, but are not limited to:

4

a. Whether ILD possessed the following documentation for all of the charges ILD caused to be placed on the local telephone bills of the Plaintiff and the Class:

     (i)    the name of the customer requesting the services,

     (ii)   a description of the service requested by the customer,

     (iii)  the date on which the customer requested the service,

     (iv)  the means by which the customer requested the service, and

     (v)   the name, address, and telephone number of all sales agents involved;

b. Whether ILD and the third-party service providers conspired to misrepresent to local telephone companies that they possessed the documentation required by Indiana law for the charges ILD caused to be placed on the local telephone bills of the Plaintiff and the Class;

c. Whether an enterprise existed consisting of ILD and the third-party service providers for the purposes of submitting false documents to local telephone companies in order to collect compensation for third-party service provider charges in violation of Indiana law;

d. Whether ILD and third-party service providers used the mails and wires to misrepresent that they possessed documentation in compliance with Indiana law for the charges ILD caused to be placed on the telephone bills of the Plaintiff and the Class;

e. Whether Plaintiff and the Class suffered an injury in their person or property resulting from ILD's scheme;

f. Whether ILD is liable for conspiracy to violate the federal RICO statute;

g. Whether ILD is liable for conspiracy to violate Indiana law;

h. The nature and extent of damages, restitution and other relief to which the Plaintiff and the Class are entitled as a result of ILD's misconduct.

19.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of thousands of individual lawsuits would not be economically feasible for individual Class members and would cause a strain on judicial resources, yet each Class member would be required to prove an identical set of facts in order to recover damages. And because the damages suffered by individual Class members are relatively

small, the expense and burden of individual litigation make it extraordinarily difficult for Class members to redress the wrongs done to them individually.

20.     This action does not present any unique management difficulties.

### Indiana's Preconditions to the Placement of Third-Party Service Charges on Telephone Bills

21.     After the court-ordered break-up of AT&T in the 1980s, an industry sprung up involving the billing of various third-party services on customers' local telephone bills. The practice—known as "local exchange carrier" or "LEC" billing—allows hundreds of third-party service providers across the country to have charges for their purported services aggregated, and, working in conjunction with billing aggregators like ILD, included on customers' local telephone bills. The charges that appear on telephone bills through LEC billing usually have nothing to do with phone services.

22.     Because there are significant costs and technical requirements for a third-party service provider to have a direct contract with a LEC, the service providers depend on billing aggregators, like ILD, to contract directly with the LEC to reduce costs and manage technical requirements. The third-party service providers could not have their charges placed on local telephone bills without the involvement of billing aggregators, like ILD.

23.     To prevent abuses in the LEC billing industry, Indiana law conditions the validity of those charges, and collection of compensation for those charges, entirely on whether billing aggregators such as ILD possess and deliver to the telephone company the five requisite categories of documentation, and not on whether the customer actually ordered or received the service. Indiana law forbids ILD from collecting compensation for those charges in the absence of that required documentation.

6

24.     Indiana Code § 8-1-29-5 provides that "[a] customer of a telecommunications provider may not be . . . billed for services by a telecommunications providers that without the customer's authorization added the services to the customer's service order."

25.     Pursuant to the authority granted in § 8-1-26-6, the Indiana Utility Regulatory Commission promulgated administrative rules which provide that "no PIC [provider of long distance telecommunications services] or LEC [local exchange carrier] or any billing agent acting for said PIC or LEC shall bill a customer for any service unless the PIC, LEC, or billing agent possesses written or electronic documentation that shows:

(1)     the name of the customer requesting the services;

(2)     a description of the service requested by the customer;

(3)     the date on which the customer requested the service; and

(4)     the means by which the customer requested the service; and

(5)     the name, address, and telephone number of all sales agents involved."

170 Ind. Admin Code ("IAC") 7-1.1-19(p).

26.     The Indiana Administrative Code then expressly prohibits a billing aggregator from receiving any compensation if it does not possess documentation of those five categories of information, regardless of whether the third-party service was actually ordered or received by the customer. 170 IAC 7-1.1-19(q) provides that "[n]o PIC, LEC, or billing agent for any PIC or LEC shall be entitled to any compensation from a customer for services rendered in violation of this rule." (170 IAC 7-1.1-19(p) and (q) are referred to as the "Indiana Regulation.")

27.     ILD is a billing agent acting for a LEC because the LECs and ILD agree that, subject to conditions set by the LECs, ILD can use the LEC's billing infrastructure, including their billing and collection systems and telephone bills, to allow ILD to place charges for third-

7

party services on local telephone customers' bills. In exchange for agreeing to allow ILD to place charges on AT&T's local telephone bills, ILD agrees to let AT&T take a cut of the customers' payments.

### ILD's Intentional Noncompliance with the Indiana Regulation

28.     To place third-party service provider charges on local telephone customers' bills in Indiana, the third-party service providers and ILD devised a scheme where they agreed to submit false documents to AT&T in which they falsely stated that they complied with the Indiana Regulation (the "LEC Billing Scheme").

29.     The LEC Billing Scheme beings when a third-party service provider, or a verification provider hired by the third-party service provider, using the wires and/or mails, obtains the purported "authorization" of local telephone customers to be billed for charges on phone bills.

30.     None of the purported customer authorizations complies with the Indiana Regulation because each uniformly omits three required categories of documentation: (i) the date on which the customer requested the service, (ii) the means by which the customer requested the service, and (iii) the name, address, and telephone number of all sales agents involved.

31.     Furthermore, ILD never has possession of the purported authorizations and never delivers them to the local telephone companies. Instead, the purported authorizations are retained by ILD's third-party service providers or the verification providers.

32.     The only information that the third-party service providers send to ILD before ILD instructs the local telephone companies to place charges on customers' telephone bills is a coded data string that looks like this:

42500108051300000000000000000000000000000004995000000000000000000000000000000000
00000000000000000000000000000000  3172909727  125800000000000000000001000
MONTHLY FEE

33.     The coded data string contains even less information than the purported

authorizations because the data strings always lack the following four categories of information

required by the Indiana Regulation: (i) the name of the customer requesting the service, (ii) the

date on which the customer requested the service, (iii) the means by which the customer

requested the service, and (iv) the name, address, and telephone number of all sales agents

involved.

34.     ILD, knowing that the coded data strings do not contain all the information

required by the Indiana Regulation, then uses the mails and wires to intentionally transmit those

data strings to local telephone companies for the placement of third-party service provider

charges on customers' telephone bills.

35.     The local telephone companies then place those charges on their customers' local

telephone bills.

36.     When the customers pay the bills to the local telephone company, the payments

are collected by the local telephone company which first takes its cut of the payments. The

telephone company then remits the remaining funds to ILD which takes it cut of the payments.

ILD, using the wires and/or mails, then distributes the remainder of these customers' payments to

the third-party service providers.

37.     The LEC Billing Scheme is very lucrative for ILD. Between 2003 and 2009, ILD

forwarded over 9,300,000 data strings for placement of charges on the bills of over 810,000

Indiana telephone numbers, and the total dollar amount of those charges exceeded $50 million.

**ILD's LEC Billing Scheme Evades Compliance with the Indiana Regulation**

38.     As part of the LEC Billing Scheme, ILD and the third-party service providers intentionally make false sworn representations to the local telephone companies that are designed to create the appearance of compliance with the Indiana Regulation so that ILD and the third-party service providers can have their charges placed on customers' telephone bills, and so ILD and the third-party service providers can obtain compensation from customers for those charges.

### I.     ILD's and the Third-Party Service Providers' False Representations to Telephone Companies That They Comply with the Indiana Regulation

39.     Before ILD can cause a particular service provider's charges to be placed on customers' telephone bills, ILD and the third-party service provider must go through an application process with the local telephone company in which they seek approval for that service provider to participate in LEC billing.

40.     As part of that application process and in furtherance of the LEC Billing Scheme, ILD executes and, using the wires and/or mails, delivers to local telephone companies such as AT&T an affidavit in which ILD falsely represents, under oath, that ILD "examined all . . . billing record[s]" that "are submitted by [ILD] to AT&T Telcos to bill and ha[s] determined that the charges are true and correct and accurately reflect proper charges legally owed by the end-user customer." *See* Ex. A, a specimen copy of the affidavit obtained from https://primeaccess.att.com. That sworn statement is false when executed by ILD: ILD knows that the Indiana customers' billing records do not reflect charges that are legally owed because ILD knowingly violates the Indiana Regulation for all of the charges it places on telephone bills in Indiana, by failing to possess the required documentation, and as a result, is prohibited from collecting compensation from customers for those charges.

41.     In furtherance of the LEC Billing Scheme the third-party service providers also make false sworn statements to local telephone companies such as AT&T in a second series of false affidavits. The third-party service providers, using the wires and/or mails, all submit affidavits to AT&T where they falsely "certify that . . . charges are true and correct and accurately reflect proper charges legally owed by the end-user customer." *See* Ex. B, a specimen copy of the affidavit available at https://primeaccess.att.com. Those statements are false because the third-party service providers know the charges do not comply with the Indiana Regulation because neither the third-party service providers nor ILD maintain all of the documentation required by the Indiana Regulation, and as a result, they are prohibited from collecting compensation from customers for those charges.

42.     In furtherance of the LEC Billing Scheme, ILD makes additional false statements regarding compliance with the Indiana Regulation in its contracts with local telephone companies such as AT&T. In those contracts, ILD represents that it complies with all state laws and regulations regarding verification or retention of telephone customers' consent to purchases from ILD or the third-party service providers, including any obligation to create or retain any documents or records signed or otherwise provided by telephone customers or used by the verification provider to record or establish consent, or any other documents or information used to record or establish consent. That statement is false: ILD knows that it does not and will not comply with the Indiana Regulation because it does not create or retain the five categories of information required to establish customers' consent in Indiana, and as a result, is prohibited from collecting compensation from customers for those charges.

43.     In its contracts with AT&T, ILD also certifies that, when forwarding service charges to AT&T, such charges are true, correct and properly owed by the billed telephone

11

customer. That statement is also false: When forwarding service charges to AT&T, ILD knows

that no compensation for these charges can be collected because, for each of those charges, ILD

does not possess the documentation required by the Indiana Regulation.

44.    AT&T recognizes the significant potential litigation risk involved by ILD's

failure to comply with the Indiana Regulation by providing in its contracts with ILD that it is

ILD's responsibility to preserve and maintain the required documentation in order to defend

against lawsuits. Those contracts also provide that AT&T strictly relies on ILD to forward only

correct billing data that can be, if necessary, substantiated in a court.

## II.    ILD Admits to Third-Party Service Providers That It Knows the Charges Do Not Comply with the Indiana Regulation

45.    In direct contrast to ILD's sworn representations to AT&T—in which ILD falsely

states that it possesses all the documentation required by the Indiana Regulation—ILD's

contracts with the third-party service providers admit that ILD has no knowledge of the accuracy

of the very information that ILD swore to AT&T was valid.

46.    Despite promising the contrary to local telephone companies, the third-party

service providers and ILD know that neither of them possess the documentation required by

Indiana law, and in furtherance of the LEC Billing Scheme and to conceal that scheme, ILD's

contracts with the third-party service providers state that the parties agree to rely on the third-

party service provider to forward only correct billing charges that can be, if necessary,

substantiated in a court.

47.    Based on the foregoing, ILD has devised a scheme to defraud that involves

misrepresenting whether ILD or the third-party service providers have obtained the

documentation required by the Indiana Regulation before placing third-party service provider

charges on customers' bills and before being entitled to collect compensation from customers for those charges.

48.     As a result, ILD has for years systematically, repeatedly and uniformly escaped compliance with the Indiana Regulation and billed and collected millions of dollars in charges from Indiana local telephone customers when it was expressly prohibited by the Indiana Regulation from collecting those charges. ILD and the third-party service providers have profited greatly from this misconduct.

49.     ILD's misconduct constitutes a deliberate and willful scheme to obtain millions of dollars from Indiana citizens which ILD was not entitled to obtain.

50.     Because the amount of these charges is small on an individual basis—ranging from a few dollars to at most several hundred dollars per customer—ILD employs this scheme with the expectation that its illegal conduct will, if detected, go unpunished.

51.     ILD's conduct is deliberate and willful because ILD knows that its billing procedures do not comply with the Indiana Regulation, and ILD refuses to comply with these documentation requirements and instead continues to engage in the fraudulent scheme where ILD makes false representations about its noncompliance with those requirements in order to collection compensation from customers.

### ILD's Charges Placed on Plaintiff's Telephone Bills

52.     Plaintiff is a subscriber of AT&T, which is Plaintiff's local telephone company.

53.     In February, March, May and June of 2009, Plaintiff's monthly AT&T telephone bill included a $49.97 charge on ILD's bill page that was described as "ONLINE YELLOW PGS-INET AD MONTHLY FEE." *See* Exs. C–F.

54.    ILD has its own page on customers' multi-page, local telephone company bills. The ILD bill page, which is typically one out of six pages, from the Plaintiff's telephone bill appears as follows:

**I L D**
*Teleservices Inc.*

A
4212 N COLLEGE AVE
INDIANAPOLIS, IN 46205-1930

Page   6 of 6
Account Number   317 921-2355 917 0
Billing Date   Feb 22, 2009

Questions?   1-800-433-4518

Invoice Number   317921235502

**Important Information**

This portion of your AT&T bill is provided as a service to the above company. Please review all charges carefully - they may include those of a service provider not shown on a previous bill. Unpaid accounts may be subject to collection action. Other services may also be restricted if not paid. If you have questions about any of the charges appearing on this page, please call the number shown above.

**Current Charges**

Miscellaneous Charges and Credits
This section of the bill reflects charges and/or credits applied to your account.
No.   Date   Description
ONLINE YELLOW PAGES, LLC
For billing questions call 1-800-433-4518
For Services on 317 924-4114

| | | | |
|---|---|---|---|
| 1 | 02-21 | ONLINE YELLOW PGS-INET AD MONTHLY FEE | 49.97 |

Total ILD Teleservices, Inc.                                    49.97

55.    In February, March, May and June of 2009, the following appeared on the front page of Plaintiff's six-page monthly AT&T telephone bill:

**Billing Summary**

Questions? Visit att.com

| | |
|---|---|
| Plans and Services | 343.37 |
| 1-888-727-2100 | |
| Repair Service: | |
| 1-800-727-2273 | |
| For more information on products and services call | |
| 1-800-660-3000 | |
| AT&T Long Distance | 45.90 |
| 1-888-727-2100 | |
| AT&T Advertising & Publishing | 11,409.60 |
| 1-800-479-2977 | |
| ILD Teleservices, Inc. | 49.97 |
| 1-800-433-4518 | |
| **Total of Current Charges** | **11,848.84** |

56.    For all of the charges on Plaintiff's and the Class members' telephone bills,

because of the LEC Billing Scheme, neither ILD, nor the third-party service providers, nor

AT&T, possessed documentation of the five categories of information required by the Indiana

Regulation, and for all of those charges, in furtherance of the LEC Billing Scheme, ILD and the

third-party service providers made false representations to the telephone companies that they

complied with the Indiana Regulation.

57.    Plaintiff and the Class members paid all of the charges from ILD that were placed

on their phone bills.

58.    After receiving the payments of the Plaintiff and the Class, AT&T first took its

cut of the payments and then remitted the remaining funds to ILD. ILD then took its cut of the

payments, and using the wires and/or mails, ILD then distributed the remainder of the payments

to third-party service providers.

59.    The Plaintiff's and the Class members' payments of charges to ILD were

procured through deception and in violation of federal policy embodied, among other places, in

the Racketeering Influenced and Corrupt Organizations Act as well as in violation of state policy

embodied in the Indiana Regulation.

**COUNT I**
**Violations of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.***

60.    Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

61.    ILD is a corporate person within the meaning of 18 U.S.C. § 1961(3), (4).

62.    The Plaintiff and each putative member of the Class is a "person" within the

meaning of 18 U.S.C. § 1961(3).

15

## I.     The LEC Billing Enterprise

63.     ILD and the hundreds of third-party service providers for which ILD provides billing services (such as Online Yellow Pages, LLC for whom ILD forwarded charges as it relates to the Plaintiff's telephone bill) were associated in fact and constituted a RICO enterprise, within the meaning of 18 U.S.C. §1961(a)(4) (the "LEC Billing Enterprise").

64.     The purpose of the LEC Billing Enterprise was to evade compliance with the Indiana Regulation by submitting false affidavits and false statements in contracts to local telephone companies such as AT&T that falsely stated that ILD and the third-party service providers complied with the Indiana Regulation in order to obtain, bill and collect compensation from Class members for charges on the Class members' local telephone bills that did not comply with the Indiana Regulation.

65.     Each member of the LEC Billing Enterprise participated in the process of misrepresenting to local telephone companies that they complied with the Indiana Regulation as well as billing and collecting compensation from Class members for charges on local telephone bills of the Class members that violated the Indiana Regulation for the shared benefit of the members of the LEC Billing Enterprise. Additionally, the members of the LEC Billing Enterprise utilized their identical contractual relationships, computer systems, and organization of their joint billing and collection business to bill and collect compensation for the third-party service provider charges on local telephone bills of the Plaintiff and Class members in violation of the Indiana Regulation.

66.     Each member of the LEC Billing Enterprise played the role alleged herein in misrepresenting to local telephone companies that they complied with the Indiana Regulation as well as obtaining, transmitting, billing and collecting compensation for charges on local

telephone bills of the Class members that violated the Indiana Regulation under the direction of ILD and pursuant to its scheme to bill and collect millions of dollars in compensation for third-party service providers charges from local telephone customers.

67.     The LEC Billing Enterprise has existed at least four years prior to the filing of this complaint, and has successfully achieved its purpose of misrepresenting to local telephone companies that ILD and the third-party service providers complied with the Indiana Regulation as well as transmitting, billing and collecting compensation for charges on local telephone bills of the Class members that did not comply with the Indiana Regulation for the shared benefit of the members of the LEC Billing Enterprise.

## II.     Effect on Interstate Commerce

68.     The LEC Billing Enterprise engaged in and affected interstate and foreign commerce by submitting false documents to local telephone companies in Indiana and by placing charges on the telephone bills of Indiana customers for the benefit of ILD and the third-party service providers, who are located outside of Indiana, including, transferring funds from Indiana to those entities in other states through interstate commerce.

## III.     ILD's Ongoing Pattern of Racketeering Activity: the LEC Billing Scheme

69.     Beginning at a date currently unknown to the Plaintiff but at least four years prior to the filing of this complaint, ILD adopted and implemented one centrally managed and uniform scheme to defraud Indiana local telephone customers by misrepresenting to local telephone companies that it and the service providers complied with the Indiana Regulation in order to bill and collect charges from Indiana telephone customers that did not comply with the Indiana Regulation.

70.     To implement this fraudulent scheme ILD associated itself with the third-party service providers by entering into virtually identical contractual relationships setting forth the terms and conditions upon which ILD, and in turn, the third-party service providers, would utilize the local telephone companies' billing and collection system to submit third-party service provider charges to Indiana local telephone customers, while simultaneously ILD and the third-party service providers agreed to falsely state to the local telephone companies that the charges complied with the Indiana Regulation (when they did not). As part of the scheme, ILD shared with the third-party service providers a portion of the proceeds of the third-party service provider charges that the local telephone companies billed and collect from customers through the fraudulent scheme ("LEC Billing Scheme").

71.     Pursuant to the LEC Billing Scheme, ILD directly or indirectly has designed and implemented a common and uniform scheme to defraud. ILD's contracts with local telephone companies and the third-party service providers, the affidavits ILD and the third-party service providers submit to local telephone companies, and the billing and collection systems used to implement the LEC Billing Scheme, are one common, uniform and identical system used in virtually an identical manner as to each local telephone customer for whom ILD causes service charges to be placed on their bill. There are billing and collection contracts between ILD and local telephone companies that operate in Indiana, and between ILD and the hundreds of third-party service providers, and affidavits submitted by ILD and the third-party service providers to local telephone companies, which are virtually identical and were designed and implemented to further the one uniform LEC Billing Scheme alleged herein.

72.     Within the past four years ILD has billed and collected millions of dollars in compensation for third-party service provider charges pursuant to the LEC Billing Scheme to

falsely represent to local telephone companies that ILD and the third-party service providers complied with the Indiana Regulation in order to bill and collect compensation for third-party service provider charges from Indiana local telephone customers.

73.   Within the past four years, ILD, using the LEC Billing Enterprise, has knowingly, intentionally, and/or recklessly engaged in an ongoing, open-ended scheme, artifice and pattern of racketeering under 18 U.S.C. § 1962(c) by committing the predicate acts of mail fraud within the meaning of 18 U.S.C. § 1341, and wire fraud within the meaning of 18 U.S.C. § 1343, by knowingly and intentionally implementing the scheme to bill and collect millions of dollars in compensation for third-party service provider charges from Indiana local telephone customers, and by making false statements to local telephone companies about the noncompliance of those charges with the Indiana Regulation.

74.   ILD, having devised or intended to devise a scheme or artifice to defraud Indiana local telephone customers, for the purpose of executing such scheme or artifice or attempting to do so, placed and/or knowingly caused to be placed in a post office or authorized depository for mail matter, documents and/or packages to be sent or delivered by the Post Service or a private or commercial interstate carrier, and/or received from these entities such documents and/or packages, including but not limited to: (i) affidavits ILD and the third-party service providers submitted to local telephone companies misrepresenting that the charges were compliant with the Indiana Regulation, (ii) billing and collection agreements between ILD and the local telephone companies and between ILD and the third-party service providers misrepresenting that the charges were compliant with the Indiana Regulation, and (iii) correspondence regarding the foregoing (collectively the "Mailing Acts").

19

75.    ILD, having devised or intended to devise a scheme or artifice to defraud consumers, for the purpose of obtaining compensation from Indiana local telephone customers by means of false or fraudulent pretenses, representations, or promises to local telephone companies, for the purpose of executing such scheme or artifice or attempting to do so, placed and/or knowingly caused to be placed in a post office or authorized depository for mail matter, documents and/or packages to be sent or delivered by the Postal Service or a private or commercial interstate carrier, and/or received from these entities such documents and/or packages, including but not limited to the Mailing Acts.

76.    ILD, having devised or intending to devise a scheme or artifice to defraud consumers, and/or for obtaining money from Indiana local telephone customers by means of false or fraudulent pretenses, representations, or promises to local telephone companies, transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce, writings, signs, signals, and pictures, for the purpose of executing such scheme or artifice, including the: (i) transmission of data strings for the charges of the third-party service providers to ILD to ultimately be billed and collected pursuant to the LEC Billing Scheme, (ii) transmission of data strings for third-party service provider charges by ILD to the local telephone companies to ultimately be billed and collected pursuant to the LEC Billing Scheme, (iii) transmission of e-mail communications relating to the process of misrepresenting to local telephone companies that the charges were compliant with the Indiana Regulation and transmitting, billing and collecting compensation for third-party service provider charges on local telephone companies' bills to the Plaintiff and Class members, and (iv) collection of funds from local telephone customers via electronic fund transfers or electronic communications with

the customers' bank or credit card institution and transmitting payment from the local telephone company to ILD, and by transmitting payments from ILD to the third-party service providers.

77.     ILD also used the mails and wires in conjunction with reaching the agreement between itself and the other members of the LEC Billing Enterprise with respect to the process of falsely representing that the charges were compliant with the Indiana Regulation in order to transmit, bill and collect the charges on local telephone customers' bills to the Class members.

78.     Plaintiff and the Class members did not have a reasonable opportunity to uncover or expose the fraud committed by this racketeering activity.

## IV.     Injury to the Plaintiff and Class Members in their Business or Property by Reason of the Pattern of Racketeering Activity

79.     Plaintiff and Class members are the direct, primary and intended victims of ILD's fraudulent conduct described in this complaint, because Plaintiff and Class members paid compensation to local telephone companies (which took its cut of that compensation and then sent the money to ILD which took its cut of the compensation) to pay for the charges ILD caused to be placed on their telephone bills as a result of the LEC Billing Scheme, and for which ILD was flatly prohibited from collecting because the charges did not comply with the Indiana Regulation.

80.     Plaintiff and Class members were injured in their business or property because they were billed for and paid compensation for charges that were placed on their local telephone bills as a result of the LEC Billing Scheme, for which ILD was flatly prohibited from collecting because the charges did not comply with the Indiana Regulation, and because Plaintiff and Class members were the primary and intended victims of the scheme to defraud. It was a foreseeable and natural consequence of ILD's scheme that the local telephone companies would place the

charges on local telephone bills and that Indiana local telephone customers would pay them compensation for those charges.

81.     As a direct and proximate result of the racketeering activities described herein, Plaintiff and the Class members are entitled to recover damages, including restitution, treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## COUNT II
### For Conspiracy to Violate the
### Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*

82.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

83.     ILD has conspired with the third-party service providers to carry out the LEC Billing Enterprise described above and to violate 18 U.S.C. § 1962(c), as alleged above, in violation of 18 U.S.C. § 1962(d). Each has aided, assisted and abetted the others in carrying out and attempting to carry out the LEC Billing Enterprise.

84.     ILD by words or action agreed to maintain an interest in or control the LEC Billing Enterprise and/or to participate in the affairs of the LEC Billing Enterprise through a pattern of racketeering activity, as alleged herein.

85.     As alleged herein, ILD by words or action manifested an agreement to commit two or more predicate acts in furtherance of the common purpose of the LEC Billing Enterprise.

86.     As alleged herein, ILD knew of the conspiracy's goals and agreed to facilitate and/or to aid, assist and abet the others in carrying out the conspiracy by, among other things, two predicate acts of mail and wire fraud.

## COUNT III
### Damages Resulting From Civil Conspiracy

87.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

88.     ILD and the third-party service providers, including specifically Online Yellow Pages, LLC, combined and agreed by concerted action to accomplish unlawful purposes, including but not limited to, misrepresenting to local telephone companies about compliance with the Indiana Regulation so that ILD could bill and collect compensation for charges that did not comply with the Indiana Regulation, and that were paid by the Plaintiff and Class members.

89.     As a direct and proximate result of ILD's conspiracy with the third-party service providers the Plaintiff and Class Members suffered substantial damages, losses, and injuries.

## DEMAND FOR JURY TRIAL

Plaintiff, by counsel, demands trial by jury in this matter.

## REQUEST FOR RELIEF

WHEREFORE the Plaintiff demands the following relief:

1.     That the Court certify a Class as requested herein, appoint Plaintiff as the Class representative and appoint Plaintiff's counsel as Class Counsel;

2.     That the Court enter judgment against ILD, and in favor of the Plaintiff and Class, for threefold the damages the Plaintiff and Class members sustained, the costs of this action, including reasonable attorneys' fees, and prejudgment interest, under 18 U.S.C. §1964(c);

3.     That the Court enter judgment against ILD, and in favor of the Plaintiff and Class, in an amount sufficient to compensate them for the damages caused by ILD's conspiracy, and for the costs of this action, attorneys' fees, and prejudgment interest; and

4.     Any other just and equitable relief appropriate under the circumstances and facts presented.

Dated: May 12, 2011

Respectfully submitted,

Richard E. Shevitz
Scott D. Gilchrist
Lynn A. Toops
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN  46204
Telephone:  (317) 636-6481
Facsimile:  (317) 636-2593
ilevin@cohenandmalad.com
rshevitz@cohenandmalad.com
sgilchrist@cohenandmalad.com
ltoops@cohenandmalad.com

*Counsel for Plaintiff and the proposed
Plaintiff Class*